# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION
# 3:12-cv-283-FDW
# (3:09-cr-39-FDW)

| | |
|---|---|
| JAWAAD NASH, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**THIS MATTER** is before the Court on Respondent's Motion to Dismiss Petitioner's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255. (Doc. No. 7).

## I. BACKGROUND

On April 22, 2009, the Grand Jury for the Western District of North Carolina indicted Petitioner Jawaad Nash and fourteen co-defendants, with conspiring to possess powder and crack cocaine, heroin, and marijuana, in violation of 21 U.S.C. §§ 846 and 841(a)(1); conspiracy to maintain premises for drug trafficking, in violation of 21 U.S.C. §§ 846 and 856(a)(2); maintaining premises for drug trafficking and aiding and abetting the same, in violation of 21 U.S.C. § 856(a)(2) and 18 U.S.C. § 2; seven counts of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1); four counts of conspiracy to commit robbery, in violation of the Hobbs Act, 18 U.S.C. § 1951; using a communication facility in committing the charged drug-trafficking conspiracy, in violation of 21 U.S.C. § 843(b); and possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1). (3:09-cr-39, Doc. No. 114: Superseding Indictment).

On June 5, 2009, the Government filed an Information in accordance with 18 U.S.C. § 851, notifying this Court and Petitioner that the Government intended to seek an enhanced sentence based on Petitioner's prior conviction of two felony drug offenses. (Id., Doc. No. 151: 21 U.S.C. § 851 Information). On June 9, 2009, the Court accepted Petitioner's guilty plea to the drug-trafficking conspiracy and the four Hobbs Act conspiracy offenses in accordance with a written plea agreement with the Government. (Id., Doc. No. 144: Plea Agreement; Doc. No. 154: Acceptance and Entry of Plea Agreement).

In the plea agreement, Petitioner explicitly acknowledged that he was subject to an enhanced sentence because of the Government's Section 851 notice, but the Government agreed to withdraw one of the two prior convictions, with Petitioner acknowledging that he faced a sentence of at least 20 years in prison but not more than life in prison. (Id., Doc. No. 144: Plea Agreement at 2). Petitioner also stipulated that he was responsible for more than 50 grams of crack, that he should receive a two-level enhancement to his offense level because of his role in the offense as supervisor or manager, and that he should receive a two-level enhancement because he possessed a firearm in connection with the drug-trafficking conspiracy. (Id. at 3). Finally, Petitioner agreed, "in exchange for the concessions made by the United States in [the] plea agreement," Petitioner "waive[d] all rights to appeal or collaterally attack the sentence of conviction," with the exception of claims based on ineffective assistance of counsel or prosecutorial misconduct. (Id. at 6-7).

After a routine hearing and colloquy conducted pursuant to Federal Rule of Criminal Procedure 11, this Court accepted Petitioner's guilty plea as knowingly and voluntarily entered. (Id., Doc. No. 502: Rule 11 Hrg. Tr. at 13). Before Petitioner's sentencing hearing, the probation officer submitted a Presentence Report ("PSR"). Based on the probation officer's review of the

evidence against Petitioner, the probation officer concluded that more than 4.5 kilograms of crack were reasonably foreseeable to Petitioner during the course of his participation in the conspiracy to which he pled guilty. (Id., Doc. No. 338: PSR at 15). Based on that drug quantity, the probation officer calculated a base offense level of 38 and a total offense level of 40, after a three-level enhancement for role-in-the-offense, a two-level enhancement based on his firearm possession, and a three-level reduction for acceptance of responsibility. (Id. at 16-19). When combined with a criminal history category of V, this offense level generated an applicable Sentencing Guidelines range of imprisonment of between 360 months and life in prison. (Id. at 29). Because the Government had not yet withdrawn its Section 851 notice as to one of Petitioner's two prior felony drug offenses, the probation officer noted that Petitioner faced a sentence of mandatory life in prison and a statutory maximum term of 20 years in prison as to the four Hobbs Act offenses. (Id.). In response to the PSR, Petitioner's counsel filed numerous objections and a motion for a downward departure. (Id., Doc. Nos. 348; 352). With respect to objections, Petitioner's counsel objected to the Section 851 notice on the basis that the prior convictions relied upon by the Government were not for offenses punishable by more than one year in prison, relying on the Supreme Court's decision in Carachuri-Rosendo v. Holder, 130 S. Ct. 2577 (2010). (Id., Doc. No. 422: Def. Sent. Mem. & Mot. for Downward Departure at 1-4).

Petitioner's counsel also objected to the application of statutory ranges set forth in 21 U.S.C. § 841(b) before it was amended by the Fair Sentencing Act of 2010 ("FSA"), Pub. L. No. 111-220, 124 Stat. 2372, on August 3, 2010. (Id. at 4-6). Petitioner's counsel also objected to drug quantity and a three-level enhancement based on role-in-the-offense, rather than the two-level enhancement agreed upon in the parties' plea agreement. (Id. at 6-8). Finally, pertinent to Petitioner's assertions in his Section 2255 motion, Petitioner's counsel requested that this Court

impose a downward variance sentence based in part on the "unfair disparity between cocaine and crack sentences" and the Supreme Court's decision in Kimbrough v. United States, 522 U.S. 85 (2007). (Id. at 12-15).

This Court conducted Petitioner's sentencing hearing on August 26, 2010. After formally accepting Petitioner's guilty plea as knowingly and voluntarily made, this Court overruled Petitioner's objection to the drug quantity of more than 4.5 kilograms and, with the Government's consent, sustained Petitioner's objection to the three-level enhancement based on role-in-the-offense, applying the two-level enhancement to which the parties agreed. (Id., Doc. No. 503: Sent. Hrg. Tr. at 43-44). Based on the Court's rulings on Petitioner's Guidelines-based objections, the parties agreed that the applicable Sentencing Guidelines range of imprisonment was between 360 months and life. (Id. at 56). Turning to Petitioner's challenge to the Section 851 notice, Petitioner's counsel acknowledged that, by the terms of the plea agreement, he was bound by his acknowledgment that he faced a statutory mandatory minimum of 20 years and a statutory maximum of life in prison on the basis of one prior conviction for a felony drug offense, the Government having agreed to withdraw the other prior conviction. (Id. at 56-57; see also id. at 70). Turning to the application of the FSA, Petitioner's counsel noted that the FSA had not been enacted when the parties entered into the plea agreement but requested that it be applied nevertheless. (Id. at 57).

The Court ultimately overruled Petitioner's objection based on Carachuri-Rosendo and held that the FSA did not apply to Petitioner's sentencing proceeding, because he had committed his offense before its enactment.[1] (Id. at 70-72). Based on the Court's rulings, the parties agreed

---

[1] The parties entered into the written plea agreement on June 2, 2009. The effective date of the FSA was August 10, 2010. Petitioner was sentenced on August 26, 2010. The U.S. Supreme Court issued Dorsey v. United States, 132 S. Ct. 2321 (2012), on June 21, 2012, and held that the

that Petitioner faced a statutory range of 20 years to life in prison. (Id. at 70). After considering Petitioner's arguments in favor of a downward variance and declining to vary downward based on the crack:powder ratio, id. at 84, the Court sentenced Petitioner to 330 months in prison as to the drug-trafficking offense, a 30-month downward variance, and 240 months as to his Hobbs Act convictions, id. at 93.

Petitioner appealed. After Petitioner's counsel filed an Anders brief, see Anders v. California, 386 U.S. 738 (1967), Petitioner filed a pro se supplemental brief in which he argued that his prior convictions did not constitute "felony drug offenses" for purposes of 21 U.S.C. § 851 because he could not have received a sentence of more than one year in prison and that he should have been sentenced in accordance with the Fair Sentencing Act. After requesting and receiving a response to Petitioner's FSA argument from the Government, the Fourth Circuit dismissed Petitioner's appeal, holding that he had waived his right to appeal his sentence in his "knowing and intelligent" plea agreement. United States v. Nash, 449 Fed. App'x 282, 283 (4th Cir. 2011).

On July 16, 2012, this Court granted a motion by Petitioner for reduction of sentence pursuant to 18 U.S.C. § 3582(c)(2) and Amendment 750, and reduced Petitioner's sentence from 330 months to 324 months. (Crim. Case No. 3:09-cr-39-FDW-2, Doc. Nos. 651; 665).

Petitioner now seeks to have his sentence vacated, arguing that his sentence was improperly enhanced in violation of United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc), that he should have been sentenced in accordance with the statutory ranges as modified by the FSA, and that his trial counsel improperly failed to argue for a downward variance sentence

---

more lenient penalties of the FSA applied to offenders whose crimes preceded the effective date of the FSA, but who were sentenced after that date. Thus, the Court did not have the benefit of Dorsey when declining to apply the FSA. In any event, as the Court discusses infra, Petitioner was still sentenced below the maximum sentenced allowed under post-FSA sentencing.

based on the disparity between ranges of imprisonment applicable to crack and powder cocaine offenses.[2]

## II. DISCUSSION

### A. Petitioner's Simmons and FSA Claims

On appeal, the Fourth Circuit held that Petitioner's guilty plea and attendant waivers were knowingly and voluntarily entered and that Petitioner's FSA and Simmons claims fall within the scope of that waiver.[3] Because Petitioner waived the right to bring his Simmons and FSA claims, he may not challenge them in his motion to vacate. See United States v. Lemaster, 403 F.3d 216, 220 (4th Cir. 2005) ("A criminal defendant may waive his right to attack his conviction and sentence collaterally, so long as the waiver is knowing and voluntary."). Indeed, the Fourth Circuit recently reaffirmed such position, holding as follows:

> Copeland cannot invalidate his appeal waiver now to claim the benefit of subsequently issued case law. Id. Like Brown, his claims amount to a Guidelines challenge he waived by limiting his right to appeal . . . . We are thus compelled to conclude that Copeland's claims regarding the application of Simmons fall within the scope of his valid appeal waiver.

United States v. Copeland, ___ F.3d___, No.11-4654, at *12 (4th Cir. Feb. 25, 2013) (footnote omitted).[4] In any event, as Respondent notes, Petitioner has no relief under Simmons and Carachuri because he was sentenced within the maximum sentence allowed, even without the

---

[2] On February 22, 2013, after conducting an inquiry into Petitioner's right to relief under Simmons, the Federal Defenders Office filed a motion to withdraw as counsel, which this Court granted on February 23, 2013.

[3] When the Fourth Circuit issued its decision dismissing Petitioner's appeal, the Fourth Circuit's en banc Simmons decision had not been issued. Accordingly, Petitioner's claim was explicitly based on Carachuri-Rosendo, rather than Simmons. However, the substance of Petitioner's claim before the Fourth Circuit–that his prior conviction supporting the Section 851 enhancement did not constitute a felony drug offense because it was not punishable by more than one year in prison–was the same.

[4] The appellate court distinguished such holding from earlier holdings wherein the government did not seek to enforce its waiver. Id. at n.6 (citing United States v. Jones, 667 F.3d 477, 486 (4th Cir. 2012)). The court noted that it would not sua sponte enforce the waiver.

Section 851 enhancement. See United States v. Powell, 691 F.3d 554, 562 n.1 (4th Cir. 2012) (King. J., dissenting and concurring).

Next, even if Petitioner's waiver did not encompass the right to bring a FSA claim, the claim would fail on the merits. Although application of the FSA would have decreased Petitioner's statutory mandatory minimum from 20 to 10 years in prison, he faced a statutory maximum of life in prison under Section 841(b), both before and after the enactment of the FSA, based on his stipulation that he was responsible for more than 50 grams of crack during the course of his participation in the drug trafficking conspiracy and the Government's Section 851 notice. Compare 21 U.S.C. § 841(b)(1)(A)(iii) (2009), with 21 U.S.C. § 841(b)(1)(B)(iii) (2011). Even if the prior conviction were not considered a felony drug offense, Petitioner's 330-month sentence was within the 40-year statutory maximum that applies under Section 841(b)(1)(B) based on a drug quantity of at least 28 grams of crack, even without any qualifying recidivist enhancement under § 851. See id. § 841(b)(1)(B)(iii) (2011). Because Petitioner's sentence was well above the higher mandatory minimum term of imprisonment and below the post-FSA statutory maximum sentence allowed, even assuming no prior convictions for a felony drug offense, the modifications to the statutory range made in the FSA would not have affected Petitioner's sentence.[5] In sum, Petitioner has no relief under Simmons or the FSA.

### B. Petitioner's Ineffective Assistance of Counsel Claim

Next, in his sole claim of ineffective assistance of counsel, Petitioner argues that trial counsel improperly failed to object to this Court's failure to consider a lower sentence based on the crack:powder sentencing-range disparity under the Supreme Court's decision in Kimbrough. The Sixth Amendment to the U.S. Constitution guarantees that in all criminal prosecutions, the

---

[5] Petitioner was, however, granted relief by this Court under Amendment 750 as noted above.

accused has the right to the assistance of counsel for his defense.  See U.S. CONST. amend. VI.
To show ineffective assistance of counsel, Petitioner must first establish a deficient performance
by counsel and, second, that the deficient performance prejudiced him.  See Strickland v.
Washington, 466 U.S. 668, 687-88 (1984).  In making this determination, there is "a strong
presumption that counsel's conduct falls within the wide range of reasonable professional
assistance."  Id. at 689; see also United States v. Luck, 611 F.3d 183, 186 (4th Cir. 2010).
Furthermore, in considering the prejudice prong of the analysis, the Court "can only grant relief
under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'"
Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998) (quoting Lockhart v. Fretwell, 506 U.S. 364,
369 (1993)).  Under these circumstances, the petitioner "bears the burden of affirmatively
proving prejudice."  Bowie v. Branker, 512 F.3d 112, 120 (4th Cir. 2008).  If the petitioner fails
to meet this burden, a "reviewing court need not even consider the performance prong."  United
States v. Rhynes, 196 F.3d 207, 232 (4th Cir. 1999), opinion vacated on other grounds, 218 F.3d
310 (4th Cir. 2000).

     As set forth above, Petitioner's counsel in this case explicitly argued in favor of a
downward variance on the basis of the crack:powder sentencing disparity, citing the Attorney
General's position that there should not be any sentencing disparity based on whether the offense
involved crack or powder.  Although Petitioner asserts in his motion that this Court mistakenly
believed it was not free to deviate from the 100:1 crack to powder cocaine ratio at the sentencing
phase, nothing in the record supports this assertion.  To the contrary, this Court's statements in
response to Petitioner's downward-variance argument--in which the Court acknowledged the
debate but stated that Petitioner's involvement in a violent crime supported a higher sentence--
suggests that this Court was aware of its ability to vary downward under Kimbrough.  Indeed, at

no time in response to Petitioner's argument did the Court suggest that it lacked authority to do so. Petitioner's counsel, then, requested a downward variance sentence under Kimbrough, and nothing in the record supports the assertion that this Court believed it lacked authority to vary downward on that basis. In any event, Petitioner received the benefit of a downward variance sentence as a result of his counsel's sentencing advocacy. Therefore, Petitioner has not shown deficient representation or a reasonable probability that he would have received a lower sentence had counsel made the Kimbrough argument any differently. Indeed, the sentence this Court has imposed remains an appropriate sentence in light of the offense conduct, Petitioner's criminal history, and all of the Section 3553 factors.

### III. CONCLUSION

For the reasons stated herein, the Court will grant Respondent's motion to dismiss the Section 2255 petition.

**IT IS, THEREFORE, ORDERED** that:

1. Respondent's Motion to Dismiss, (Doc. No. 7), is **GRANTED**, and the petition is **DISMISSED**.

2. Pursuant to Rule 11(a) of the Rules Governing Section 2255 Cases, this Court declines to issue a certificate of appealability as Petitioner has not made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); Miller–El v. Cockrell, 537 U.S. 322, 336-38 (2003) (in order to satisfy § 2253(c), a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong).

Signed: March 1, 2013

Frank D. Whitney
United States District Judge